PEOPLE v NUSS

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—CRIMINAL LAW—CRIMINAL SEXUAL PSYCHO-
   PATH—CASE PRECEDENT—STATUTES.

   An unreported decision of a circuit court declaring portions of the
   criminal sexual psychopath act unconstitutional is an inade-
   quate basis for disregarding Supreme Court precedent finding
   that act constitutional (MCLA 780.501 *et seq.;* MSA 28.967[1] *et
   seq.,* now repealed).

2. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATH—BAR AGAINST
   PROSECUTION—ORIGINAL OFFENSE—STATUTES.

   A defendant who has been institutionalized for a considerable
   period under the now repealed criminal sexual psychopath act
   may invoke the act's bar against prosecution for the offense
   with which he originally was charged or convicted in the
   committing court at the time of the filing of the petition to
   have the defendant determined to be a criminal sexual psycho-
   path (MCLA 780.501 *et seq.;* MSA 28.967[1] *et seq.,* now re-
   pealed).

3. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—DELAYED
   TRIAL—PREJUDICE TO DEFENDANT—EVIDENCE.

   A delayed trial can be permitted and the delay not be the basis
   for a finding of lack of due process where *some* prejudice to a
   defendant is shown by the delay between the date of an offense
   and the date of the defendant's trial for the commission of the
   offense but only where the following elements are present and
   shown clearly and convincingly to the trier of fact: (1) the delay

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 20 Am Jur 2d, Courts § 183 *et seq.,* 231 *et seq.*
   Applicability, in proceedings under statutes relating to sexual psy-
      chopaths of constitutional provisions for the protection of a
      person accused of crime. 34 ALR3d 632.
   Statutes relating to sexual psychopaths. 24 ALR2d 350.
[3, 4, 6–10] 21 Am Jur 2d, Criminal Law §§ 251, 253–255.
[9] 21 Am Jur 2d, Criminal Law § 154.

is explainable, (2) the delay is not deliberate, and (3) no *undue* prejudice attaches to the defendant.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—INCARCERATION—SPEEDY TRIAL—DELAYED TRIAL.

A defendant's incarceration or commitment for treatment due to a criminal conviction or other proceedings will rarely justify an otherwise unexplained prosecutorial delay in bringing a defendant to trial.

DISSENT BY BEASLEY, J.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—CRIMINAL SEXUAL PSYCHOPATH—BAR TO PROSECUTION—STATUTES.

*The section of the criminal sexual psychopath act which purported to bar the prosecution of a defendant for a charged offense whereby the defendant was determined to be a criminal sexual psychopathic person has been declared unconstitutional, and thus void on the day it was passed;· therefore that statute cannot be used as a bar to the prosecution of a defendant who was committed under the statute and subsequently released (MCLA 780.508; MSA 28.967[8], now repealed).*

6. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—BALANCING TEST.

*A balancing test which takes into account four factors is used to determine whether the right to a speedy trial has been violated; the four factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his rights, and (4) the prejudice to the defendant.*

7. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—CRIMINAL SEXUAL PSYCHOPATH.

*A defendant who sought to be and was adjudicated a criminal sexual psychopath cannot subsequently use the period he is so institutionalized as a basis for a claim that he has been denied his constitutional right to a speedy trial; a defendant cannot successfully claim he has been deprived of his constitutional right to a speedy trial where he has taken steps to delay and avoid trial.*

8. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—COMPLAINT.

*The constitutional provision for a speedy trial has not been construed to apply to the time between when an offense occurs*

*and when a complaint is made and a warrant issued (US Const, Am VI, Const 1963, art 1, § 20).*

9. Homicide—Murder—Limitation of Actions.

*There is no statute of limitations in murder cases.*

10. Constitutional Law—Criminal Law—Speedy Trial—Defendant's Own Action—Criminal Sexual Psychopath.

*A defendant's claim that he has been denied his constitutional rights to a speedy trial is without merit where the delay was caused by the defendant's own action in petitioning to be adjudicated a criminal sexual psychopath and was not caused by the prosecution, and no prejudice to the defendant or his ability to prepare his defense has occurred.*

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted October 6, 1976, at Lansing. (Docket Nos. 26767, 26768.) Decided May 3, 1977. Leave to appeal granted, 400 Mich 824.

Ralph C. Nuss was charged with two counts of first-degree murder. Defendant's motion to quash the information and dismiss the charges was denied. Defendant appeals by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Senior Assistant Prosecuting Attorney, for the people.

*O'Brien, Moran & Dimond* and *Conlin, O'Hagan, Henry, Hurbis & Graf,* for defendant.

Before: M. F. Cavanagh, P. J., and R. M. Maher and Beasley, JJ.

R. M. Maher, J. The posture of this appeal can be understood from the accurate recitation of the facts found in Judge Beasley's dissenting opinion.

Defendant is able to invoke the bar against

prosecution for the Brown murder found in § 8 of the repealed criminal sexual psychopath statute. MCLA 780.501 *et seq.;* MSA 28.967(1) *et seq.,* repealed by 1968 PA 143. Section 8, in effect when defendant was committed as a criminal sexual psychopathic person after being charged with the Brown murder, stated:

"No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition."

Notions of fairness embodied in both the constitutional provisions against ex post facto laws, US Const, art I, § 9; Const 1963, art 1, § 10, and the due process clauses, US Const, Am V and XIV; Const 1963, art 1, § 17, prevent the repeal of the criminal sexual psychopath statute in 1968 from eliminating the defense against prosecution available to defendant when he was committed. *In re Canfield,* 98 Mich 644; 57 NW 807 (1894), *cf. People v Reagan,* 395 Mich 306; 235 NW2d 581 (1975).

This Court's opinion in *People v Smith,* 57 Mich App 556; 226 NW2d 673 (1975), does not authorize the renewed attempt to prosecute defendant for the Brown murder. Although *Smith,*[1] for very questionable reasons, held that a defendant could not invoke the bar to prosecution in § 8, the con-

---

[1] Contrary to Judge BEASLEY's assertion, the Supreme Court's order at 396 Mich 955 (1976), did not affirm this Court's decision in *Smith,* 57 Mich App 556; 226 NW2d 673 (1975). After granting leave to appeal, *People v Louis M Smith,* 394 Mich 824 (1975), the Supreme Court, with Justices WILLIAMS, LEVIN and KAVANAGH dissenting, declined to decide the issues defendant raised. Instead, the matter was remanded to the trial court for further proceedings and defendant was told that, if convicted below, he could raise on direct appeal to the Supreme Court the issues presented by his pending appeal.

text of the appeal in *Smith* makes it inapplicable here. In an action brought on behalf of defendant Smith, the Wayne County Circuit Court had declared portions of the former criminal sexual psychopath act unconstitutional. When this Court decided *Smith,* a prosecution for murder had been initiated and the question was what effect should be given to the circuit court ruling on the act. The opinion of this Court stated:

> "The decision by the three-judge Wayne County Circuit Court declaring the statute in controversy in this case unconstitutional is also fully retroactive. Thus, the statute was void on the date it was passed." 57 Mich App at 563.

Although we cannot subscribe to the view that a declaration of unconstitutionality, because certain provisions of an act cannot survive equal protection scrutiny, deprives the entire act of any effect, this case does not require that we take issue with the holding in *Smith.*

In *People v Chapman,* 301 Mich 584; 4 NW2d 18 (1942), the Supreme Court reviewed various provisions of the criminal sexual psychopath act and found it constitutional. Surely an unreported decision of a circuit court is no basis for disregarding the Supreme Court's decision in *Chapman.* We see no reason why defendant, committed under an act held constitutional by this state's highest court, should later be denied the protection of § 8 because a circuit court, in an action in which he is not involved, finds certain provisions of the act constitutionally offensive.

Defendant, institutionalized for a considerable period under the act, can invoke the bar against prosecution in § 8. Fairness prevents telling defendant that the favorable provisions of the act

under which he was committed never existed. In
*People v Reagan, supra,* defendant sought to hold
the prosecutor to his agreement that he would not
prosecute defendant if defendant took and passed
a lie detector test. The court held that the prosecu-
tor was bound to his "pledge of public faith".

"Law enforcement processes are committed to civi-
lized courses of action. When mistakes of significant
proportion are made, it is better that the consequences
be suffered than that civilized standards be sacrificed."
395 Mich at 319.

While § 8 of the repealed act does not prevent
prosecution of defendant for the Withrow murder,
*People v Theodore Williams,* 66 Mich App 521,
529–530; 239 NW2d 653 (1976), his due process
right not to be prejudiced by the delay between
the date of the offense and the date of trial pre-
vents the stale prosecution for this crime. In *Peo-
ple v Hernandez,* 15 Mich App 141, 147; 170 NW2d
851 (1968), this Court stated the applicable test:

"Where *some* prejudice is shown, as it is shown in
this case, it can be permitted and not be the basis for a
finding of lack of due process only where the following
elements are present and shown clearly and convinc-
ingly to the trier of fact: (1) when the delay is explaina-
ble, (2) when it is not deliberate, (3) where no *undue*
prejudice attaches to the defendant." (Emphasis in orig-
inal.)

See, also, *People v Fiorini,* 53 Mich App 389; 220
NW2d 70 (1974), *On Rehearing,* 59 Mich App 243;
229 NW2d 399 (1975).

The parties do not dispute that the defendant
has suffered *some* prejudice from the eight-year
delay. The witnesses who testified to the defend-
ant's confessions admitted that they could not now

recall many of the surrounding circumstances. One of the psychiatrists who examined the defendant and testified during the hearing on defendant's commitment as a criminal sexual psychopath is now deceased. We must balance this prejudice to the defendant against the explanation for the delay to determine whether the defendant's right to a fair trial has been unduly hindered.

The dissent accurately notes that the defendant was never charged with the Withrow slaying until 1975, but fails to recognize that failure to charge the defendant also prevents the prosecutor from excusing the delay by the statutory bar in MCLA 780.508; MSA 28.967(8):

"No person who is found in such original hearing to be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood *charged,* or *convicted,* in the committing court at the time of the filing of the original petition." (Emphasis added.)

Having successfully avoided the statutory bar, the prosecutor cannot now claim that the eight-year delay was unavoidable; on the face of the statute, prosecution could have been obtained at any time. The prosecutor's only other explanation for the delay in essence is "as long as the defendant was confined, there was no need to proceed". Given the strength of a case which derives from the defendant's detailed confession, I can agree that the prosecutor had little to lose from the delay. However, a defendant's incarceration or commitment for treatment due to conviction or other proceedings will rarely justify an otherwise unexplained prosecutorial delay, and we do not find this case to

merit an exception to that rule. *Smith v Hooey,* 393 US 374; 89 S Ct 575; 21 L Ed 2d 607 (1969).

In balance, the prejudice suffered by the defendant is undue and unjustifiable. Witnesses to his confession could not recall many circumstances crucial to deciding whether or not the confession was voluntary. More importantly, one of the psychiatrists who examined defendant in 1967 and testified at his CSP hearing is now deceased. The dissent's argument that the transcript of the 1967 hearing cures any prejudice neglects the fact that the issue at defendant's criminal trial will not be the same as the issues at the CSP hearing. The record shows that the prosecutor argued in 1967 that the defendant was insane and thereby not subject to CSP treatment. The recorded testimony of the defendant's witnesses was elicited to rebut that argument, not advance it, and may be of little value at the criminal trial. Moreover, statements from a cold transcript will have less impact than those of a live witness. I would hold that this unjustified prejudice to the defendant's defense precludes a trial on the Withrow charge.

Reversed.

M. F. CAVANAGH, P. J., concurred.

BEASLEY, J. *(dissenting).* This case comes before the court on leave granted to defendant for interlocutory appeal from denial of motions to quash information and dismiss in two separate cases. The facts are stipulated and certified by the trial judge.

On November 15, 1966, the defendant, Ralph C. Nuss, signed statements before several FBI agents amounting to confessions to the homicides of Tom Brown and Arland Withrow. The defendant was charged in Federal district court with the murder of Withrow on the theory that the killing occurred

on a federal reservation. On December 7, 1966, an information was filed in Washtenaw County Circuit Court charging the defendant with the murder of Brown. On January 10, 1967, the Withrow case was dismissed in Federal court on the prosecutor's own motion for lack of jurisdiction.

On January 13, 1967, the defendant filed a petition in the Brown case asking to be declared a criminal sexual psychopathic person pursuant to the then existing MCLA 780.501, *et seq.;* MSA 28.967(1) *et seq.* The prosecution opposed this motion. After hearing the psychiatric testimony in the matter, the court found the defendant to be a criminal sexual psychopathic person and, on May 11, 1967, ordered him committed to the Ionia State Hospital. The psychiatric testimony and the decision of the court was made after the defendant had filed an instrument entitled "Demand for Speedy Trial",[1] but which, in fact, prayed for a

[1] *"DEMAND FOR SPEEDY TRIAL*

"NOW COMES the Defendant herein, Ralph C. Nuss, by his attorneys, Conlin, Kenney & Green, and represents to the Court as follows:

"1. That the Defendant is presently charged in the above entitled cause with the first degree murder of one Tom Brown.

"2. That the Defendant, Ralph C. Nuss, was charged with the first degree murder of one Arlan Winthrow *[sic]* on November 16, 1966 by the United States of America acting under complaint and warrant alleging a violation of Section 1111, title 18 USC, and was brought before the United States District Court for the Eastern District of Michigan, Southern Division. Upon motion of the United States Attorney for said district the court on January 10, 1967 entered an Order dismissing the complaint against the Defendant on the ground that it lacked jurisdiction. A copy of said Order is attached and incorporated herein by reference.

"3. That the Prosecuting Attorney for the County of Washtenaw has in his possession, or otherwise available to him, certain statements of the Defendant which constitute confessions to the murders of one Tom Brown and Arlan Winthrow *[sic].*

"4. That the Prosecuting Attorney for the County of Washtenaw has, to date, not brought an information charging the Defendant, Ralph C. Nuss, with the murder of one Arlan Winthrow *[sic].*

"5. That the records and file in this case, with specific reference to the reports of the three psychiatrists heretofore appointed by this Court to examine the Defendant, clearly show that there is more than

stay of proceedings in this case until the prosecu-
tion would charge defendant with the Withrow
murder. But although the Washtenaw County
prosecutor was on notice of the Federal dismissal,
charges were not at that time brought against
defendant in Washtenaw County in the Withrow
case.

In 1968, the criminal sexual psychopath statute
was repealed and a section was added to the public
health statutes indicating that anyone committed
as a criminal sexual psychopath could be placed on
parole if it was determined that the individual had
recovered sufficiently and was not a menace to the
safety of himself or others. If this parole was
successful for a continuous period of two years or
more, the individual could be discharged. See
MCLA 330.35(b); MSA 14.825(2), but which was
subsequently repealed by 1974 PA 258. In July of
1973, the defendant was paroled under this stat-
ute.

On April 9, 1973, a three-judge panel in the

---

probable cause to believe that the Defendant, Ralph C. Nuss, killed
one Arlan Winthrow [sic], and that such crime was directly related to
the Defendant's mental disorder coupled with criminal propensities to
the commission of sex offenses.

"6. That it would constitute a denial of the Defendant's rights
against self incrimination to require him, as a Petitioner under Act
No. 165 of the Public Acts of the State of Michigan of 1939, as
amended, in order to comply with said statute, to present evidence,
including confessions and admissions to criminal offenses for which he
is not presently charged including the murder of one Arlan Winthrow
[sic].

"7. That under the statutes of the State of Michigan and the
constitutions of the United States and the State of Michigan, the
Defendant, Ralph C. Nuss, is entitled to a speedy trial and final
determination of all charges now pending against him and of all
charges which are within the full knowledge of the Prosecuting
Attorney for the County of Washtenaw.

"WHEREFORE, the Defendant, Ralph C. Nuss, moves that the
Court enter an Order that the proceedings in this cause be stayed
until such time as the Prosecutor for the County of Washtenaw
charges the Defendant, by information, with the murder of one Arlan
Winthrow [sic]."

Wayne County Circuit Court held that the commit-
ment and release provisions of this statute were
constitutionally defective under the equal protec-
tion clause. As a result of this decision, another
criminal sexual psychopath, Louis Smith, was re-
leased from custody.

After Smith was released from custody, criminal
charges were reactivated against him in Kalama-
zoo County. Smith filed an interlocutory appeal to
this court arguing that it was improper to reacti-
vate the charges. In *People v Smith,* 57 Mich App
556; 226 NW2d 673 (1975), this Court affirmed the
circuit court's refusal to dismiss the case. The
decision in the *Smith* case was released on Janu-
ary 8, 1975. As a result of the *Smith* decision, on
January 17, 1975, the Washtenaw County prosecu-
tor reactivated charges against the defendant for
the Brown murder and, on January 16, 1975, for
the first time, instituted a charge of first-degree
murder against defendant for the Withrow killing.
Motions to quash the informations and to dismiss
the charges were filed in both cases. These motions
were denied by the trial court in a thorough, well-
reasoned opinion filed September 15, 1975. An
interlocutory appeal was taken to this Court and
this case is now before us upon leave granted.

The defendant has raised eight issues which he
contends require the reversal of the order denying
his motion and the dismissal of the charges
against him. However, the majority of these issues
are disposed of by reference to previous decisions
of the Supreme Court and of this Court. *People v
Smith, supra,* affirmed by special order of the
Supreme Court, dated February 12, 1976, 396 Mich
955 (1976), answers those issues raised by the
defendant which concern the validity and effect of
the criminal sexual psychopath statute as it rela-

tes to the Brown homicide. In *Smith,* this Court held that the criminal sexual psychopath statute was unconstitutional, that is, it was void on the day it was passed. Thus, § 8 of the CSP statute which purported to bar prosecution of a defendant on the offense which gave rise to the final CSP determination was always a nullity and does not now bar prosecution. The trial judge's decision that § 8 does not bar prosecution of defendant for the murders of Brown and Withrow was consistent with *Smith.*

Defendant also claims that his constitutional rights to a speedy trial have been violated.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." US Const, Am VI.

"In every criminal prosecution, the accused shall have the right to a speedy and public trial." Const 1963, art 1, § 20.

"The people of this state and persons charged with crime are entitled to and shall have a speedy trial." MCLA 768.1; MSA 28.1024.

The constitutional provisions afford a right of speedy trial to persons accused of crime, but in practice it has not been unusual for defendants to demand speedy trial at the same time they seek adjournment of trial.

The statute recites the obvious that the public also having a stake in the prompt trial and disposition of criminal matters is entitled to a speedy trial.

In this case, on March 14, 1967, defendant filed the instrument entitled "Demand for Speedy Trial". Nowhere in the instrument does defendant actually demand a speedy trial. It is interesting to note that on January 13, 1967, defendant had filed

his petition to be adjudicated a criminal sexual psychopath and that on March 15, 1967, hearing on the CSP petition commenced. On March 29, 1967, defendant was found to be a criminal sexual psychopath.

Since one of the statutory purposes of the CSP statute was to avoid trial, there would be an inconsistency in demanding a speedy trial when defendant's petition to be declared a criminal sexual psychopath was to be heard the next day. This was a classic example of a defendant trying to eat his cake and have it too.

On August 1, 1968, repeal of the CSP statute became effective, but on October 20, 1969, by administrative order, the Supreme Court continued the release provisions in § 7 of the CSP statute. When, on April 9, 1973, the Wayne County Circuit Court found the commitment and release provisions unconstitutional, in less than 90 days the defendant sought and obtained his release on the ground he had recovered and was no longer a menace to society.

Until at least April 9, 1973, the prosecution was prevented from proceeding with trial by the statutory bar to prosecution.

In determining whether the right to a speedy trial has been violated, a balancing test is used which takes into account four factors. They are length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant. *People v Grimmett,* 388 Mich 590, 605–606; 202 NW2d 278 (1972), *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972), *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

In the within case where Brown was the victim, the delay in trial was in no way the responsibility

of the prosecution. On the contrary, defendant sought the shelter of the CSP statute to avoid being tried for murder. While he sought that shelter within the framework of the pending murder case, it would be neither logical nor fair to permit the defendant to successfully assert that he was, during that time he was institutionalized as a criminal sexual psychopath, being deprived of his constitutional right to a speedy trial. Furthermore, the prosecutor opposed the motion of defendant to have himself declared a criminal sexual psychopath. *Smith* is authority for denial of the claim that such institutionalization prevents speedy trial. Neither the prosecution nor the defense can be held responsible for the eventual discovery and finding that the CSP statute was unconstitutional. However, defendant says that failure to prosecute after April 9, 1973, until January 17, 1975, was an unreasonable delay for which the prosecutor was responsible. Where the delay exceeds 18 months, *Collins* seems to say that the burden shifts to the prosecution to show that the defendant was not prejudiced. With respect to the case where Withrow was the victim, defendant claims that his due process rights have been violated. This claim is based on the fact that no warrant was issued in the Withrow matter until January 16, 1975. The speedy trial provision of the constitution has not been construed to apply to the time between when an offense occurs and when a complaint is made and a warrant issued. In murder cases there is not any statute of limitations. Consequently, while the constitutional provision affording a defendant a speedy trial does not extend to cover the situation where there is a delay in commencing a criminal proceeding such as in Withrow, the claim is made that if the delay becomes undue, then a defendant is deprived of due process of law.

Both of these claims involve essentially the same question, namely, has the prosecution shown that the delay has not caused the requisite prejudice to the defendant. In *People v Fiorini (On Rehearing)*, 59 Mich App 243; 229 NW2d 399 (1975), this Court held that the prosecution need only show that no undue prejudice has resulted.

It is hard to see any other conclusion than that the delay has made the prosecutor's burden of proof much more difficult. Defendant makes reference to difficulties in proving the circumstances surrounding the giving by defendant of the confessions, but this claim is dwarfed by the weighty problems the prosecution faces in proving beyond a reasonable doubt the necessary elements of murder. During the period from April 9, 1973, to January 17, 1975, neither side sought "speedy trial".

Thus, we find the delay was not caused by the prosecution and that no prejudice to defendant or to his ability to prepare his defense has occurred. Hence, we find defendant's claim that he has been deprived of a speedy trial is without merit.

In summary, while defendant filed an instrument entitled Demand for Speedy Trial, the record indicates that defendant's strategy was to avoid trial on the merits while at the same time striving to preserve his constitutional rights to "speedy trial". While this may be shrewd trial "gamesmanship", this Court, while remaining ever zealous to protect the constitutional right of persons accused of crime, will not permit such devices to avoid trial on the merits and the imposition of justice as the evidence requires. By petitioning to be adjudicated a CSP, defendant avoided trial by his own action. He cannot be permitted to escape trial by this means. Consequently, we reject any claim of viola-

tion of defendant's constitutional right to speedy trial for the period from 1966 to 1973. With respect to the last two years, namely, 1973 to 1975, we note that defendant was on "parole" as a recovered CSP. Thus, during this period there was no prejudice from "oppressive incarceration". Defendant, however, claims he was prejudiced because the long period of time from 1966 blurred the memories of the witnesses to the confession. Obviously, this was as great, if not a greater handicap to the prosecution as the defense. Lastly, defendant claims the death of a psychiatrist who testified at the CSP hearing will prejudice a defense of insanity. In this case that claim does not pass muster for the reason that there is a transcript of the psychiatrist's testimony available. No claim is made here that defendant wants a jury trial; the prosecutor would no doubt accept the offer of a jury trial with great promptness.

There is no prejudice to defendant by reason of the delay. By any reasonable measure the shoe is on the other foot. The delay has weakened greatly the prosecutor's case.

I would affirm the trial court's denial of defendant's motion to quash the information and to dismiss in each case.