## PEOPLE v THEODORE WILLIAMS

1. CRIMINAL LAW—PRISONERS—SPEEDY TRIAL—CRIMINAL SEXUAL PSY-
   CHOPATH—IONIA STATE HOSPITAL—STATUTE.

   The statute which requires the trial of an inmate of a state penal
   institution on any untried charge within 180 days after notice
   of imprisonment and a request for disposition is given to the
   prosecuting attorney of the county in which the charge is
   pending, does not apply to a person who has been committed to
   the Ionia State Hospital as a criminal sexual psychopath
   (MCLA 780.131 *et seq.;* MSA 28.969[1] *et seq.;* MCLA 780.501;
   MSA 28.967[1]).

2. CRIMINAL LAW—SPEEDY TRIAL—ARREST—INDICTMENT.

   A denial of the right to a speedy trial is generally based upon
   delay between arrest and indictment.

3. CRIMINAL LAW—SPEEDY TRIAL—DELAY BETWEEN COMPLAINT AND
   ARREST.

   A six-year delay between issuance of a murder complaint and the
   time of arrest is not a denial of the right to a speedy trial
   because the speedy trial guarantee does not attach until the
   arrest occurs.

4. CRIMINAL LAW—ARREST—SIX-YEAR DELAY—MENTAL PATIENT—
   PREJUDICE.

   Dismissal of a murder charge because of a six-year delay between
   issuance of the complaint and the arrest of defendant was
   properly denied where defendant failed to show prejudice, the
   delay was caused by the prosecutor's belief that defendant was
   an incurable psychopath and would remain at a mental hospi-
   tal, and there was no deliberate attempt to hamper the defense.

5. CRIMINAL LAW—SPEEDY TRIAL—LENGTH OF DELAY.

   The length of delay standing by itself is not determinative of a
   denial of the right to a speedy trial.

REFERENCE FOR POINTS IN HEADNOTES
[1–6] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.

6. Criminal Law—Immunity From Prosecution—Criminal Sexual
   Psychopath—Statutes.

   A defendant is not immune from prosecution on a murder charge
   to which he confessed prior to his commitment as a criminal
   sexual psychopath where the particular murder charge was not
   the offense with which he originally stood charged and it was
   not the legal impetus for the commitment (MCLA 780.508;
   MSA 28.967[8]).

Appeal from Newaygo, Harold Van Domelen, J.
Submitted October 9, 1975, at Grand Rapids.
(Docket No. 22350.) Decided January 7, 1976.

Theodore G. Williams was committed to a state
hospital as a criminal sexual psychopath and was
released over five years later. He was charged with
a murder which occurred prior to his commitment.
Defendant moved to dismiss the charges. Motion
denied. Defendant appeals by leave granted. Af-
firmed and remanded for trial with instructions.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Douglas A. Spring-
stead,* Prosecuting Attorney, (Prosecuting Attor-
neys Appellate Service, *Edward R. Wilson,* Direc-
tor, *Lee W. Atkinson,* Special Assistant Attorney
General, of counsel), for the people.

*Arsulowicz & Meana* (by *Gregory T. Arsulowicz),*
for defendant.

Before: N. J. Kaufman, P. J., and R. B. Burns
and G. R. Deneweth,* JJ.

N. J. Kaufman, J. Defendant brings this inter-
locutory appeal, alleging that the Newaygo County
Circuit Court erred in denying defendant's motion
to dismiss a criminal charge of murder. Defendant,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

previously committed to the Ionia State Hospital in 1968 as a criminal sexual psychopathic person, claims that the maintenance of the current criminal action (1) violates the "180-day rule", (2) violates his right to a speedy trial, and (3) violates a statute, MCLA 780.508; MSA 28.967(8), repealed by 1968 PA 143, § 2, which prohibited trial for the offense that originally resulted in his commitment as a criminal sexual psychopath. We affirm the circuit court's opinion and order that the trial may proceed.

In 1967, defendant was arrested for and charged with having murdered a seven-year-old girl in Allegan County. Defendant confessed not only to this murder but also to having killed a 13-year-old girl in Newaygo County. On October 16, 1967, defendant entered a plea of guilty to the Allegan County murder. Before sentencing, defendant was adjudicated a criminal sexual psychopathic person pursuant to MCLA 780.501; MSA 28.967(1) and was committed to the Ionia State Hospital. He remained at Ionia until the summer of 1973.

Three months after his release from Ionia, defendant was arrested for the Newaygo County murder to which he had confessed in 1967. Although it appears that a complaint had been drawn up on this charge in 1967, defendant had never been formally charged or arraigned for the Newaygo County murder. Defendant, who had been adjudged competent to stand trial, moved to dismiss the charges at the December, 1973 preliminary examination. This motion was denied and defendant filed the instant appeal.

I

Defendant argues first that MCLA 780.131 *et*

*seq.;* MSA 28.969(1) *et seq.,* the "180-day rule", bars this prosecution. The statute reads:

"Whenever the department of corrections shall receive notice that there is pending in this state any untried warrant, indictment, information or complaint setting forth against *any inmate of a penal institution* of this state a criminal offense for which a prison sentence might be imposed upon conviction, such inmate shall be brought to trial within 180 days after the department of corrections shall cause to be delivered to the prosecuting attorney of the county in which such warrant, indictment, information or complaint is pending written notice of the place of imprisonment of such inmate and a request for final disposition of such warrant, indictment, information or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail." (Emphasis supplied.)

Where an action is not commenced within 180-days,

"no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." MCLA 780.133; MSA 28.969(3).

Thus, to successfully invoke the 180-day rule, defendant must show that, while committed to Ionia State Hospital as a criminal sexual psychopath, he was an "inmate of a penal institution". We find that he was not, consistent with the

purposes of the 180-day rule, an "inmate of a penal institution" during his confinement in Ionia.

The case of *In re Maddox,* 351 Mich 358; 88 NW2d 470 (1958), presents significant precedent for holding that Ionia State should not be considered a "penal institution". In *Maddox,* the defendant, initially committed to Ionia State as a criminal sexual psychopath, was transferred to a state prison. The Court struck down the transfer as unconstitutional because it found that the defendant was being subjected to criminal punishment without due process of law. The Court stressed the difference between commitment to Ionia State Hospital and incarceration in a state prison. The commitment under the criminal sexual psychopath act was deemed "a civil and noncriminal proceeding". 351 Mich at 366. The removal of Maddox to a state prison was described as a "transfer to a *penal institution* of a person committed under *civil procedures for treatment".* 351 Mich at 372–373. (Emphasis supplied.)

The *Maddox* decision cited the case of *People v Chapman,* 301 Mich 584; 4 NW2d 18 (1942), which analyzed the criminal sexual psychopath act as a civil commitment statute:

> "Proceedings under the present statute are not criminal in nature and, therefore, are not circumscribed by the constitutional and statutory limitations surrounding a person accused of, or tried for, a crime.
>
> *        *        *
>
> "The present proceeding is not a criminal case but is a civil inquest concerning defendant's mental condition and sexual deviations." 301 Mich at 603–604. (Citations omitted.)

The panel further noted the fact that the statute did not speak in terms of a "criminal person" but

of a "criminal sexual psychopathic person". They stressed that a person committed under the act had not been adjudged a criminal. *Id. In People v Piasecki,* 333 Mich 122, 147; 52 NW2d 626 (1952), the Court noted that, where, in the course of a criminal proceeding, the accused is adjudged a criminal sexual psychopathic person, "the legislative requirement is that he may not be treated as a criminal".

We are further guided in construing the 180-day rule by a number of cases that indicate a literal reading of the statute. This Court, in several cases, has previously limited MCLA 780.131; MSA 28.969(1) by precise interpretation. We note specifically *People v Linscott,* 14 Mich App 334; 165 NW2d 514 (1968), *lv den* 381 Mich 807 (1969) (defendant in jail awaiting retrial is not inmate of penal institution), *People v Hallaway,* 39 Mich App 74; 197 NW2d 335 (1972) (probation revocation is not an untried charge, warrant or indictment), *People v Fossey,* 41 Mich App 174; 199 NW2d 849 (1972) (inmate in Federal prison in foreign jurisdiction is not inmate of penal institution of this state), *People v Ungurean,* 51 Mich App 262; 214 NW2d 873 (1974) (habitual criminal act information is not untried warrant, indictment, information or complaint setting forth a criminal offense), and *People v Fiorini,* 53 Mich App 389; 220 NW2d 70 (1974) (necessary knowledge to charge defendant is not equivalent of untried warrant or complaint).

Also, the criminal sexual psychopath act required that an individual adjudicated a criminal sexual psychopathic person be initially under the control of the state hospital commission, not the department of corrections. MCLA 780.505; MSA 28.967(5). The hospital commission also possessed

complete authority over the determination of eligibility for and conditions of parole. MCLA 780.506; MSA 28.967(6).[1]

Our analysis of the purpose of the 180-day rule leads us to the same conclusion as does statutory interpretation. As was stated in *People v Loney,* 12 Mich App 288, 292; 162 NW2d 832 (1968):

> " 'In formulating the statutory language, the legislature sought to protect those who face multiple charges against undue delay in trial when they are jailed in State prison while untried charges are still pending. The statute seeks to secure to those serving sentences in a State prison the enjoyment of the rule of law which, in the absence of a statute otherwise providing, prohibits imposition of a sentence to commence upon completion or expiration of another sentence.' *People v Williams* [9 Mich App 676, 682; 158 NW2d 42 (1968)] citing *In re Carey* [372 Mich 378; 126 NW2d 727 (1964)].
>
> "The purpose of the statute is clear. It was intended to give the inmate, who had pending offenses not yet tried, an opportunity to have the sentences run concurrently consistent with the principle of law disfavoring accumulations of sentences."

The purpose of avoiding consecutive sentences for separate crimes is not undercut by allowing the present prosecution. The defendant has never served a penal sentence for any crime. His commitment to Ionia State Hospital was a civil commitment for an indeterminate period of time. *In re Maddox, supra.*

Perhaps there should be a policy against subjecting a person, released from civil commitment, to a

---

[1] When present defendant was committed to Ionia State Hospital, MCLA 330.11; MSA 14.801 and MCLA 330.66; MSA 14.854 were in effect. The statutes clearly indicate that Ionia State was a "hospital for the humane, curative, scientific and economical treatment of mentally ill persons" and was not a "penal institution". The statutes were repealed, 1974 PA 258, § 1106.

subsequent penal sentence. Perhaps the rights of one who has been civilly committed should at least parallel the statutory rights of one serving a penal sentence. Those decisions are primarily for the Legislature to make.[2]

## II

Defendant contends that his constitutional right to a speedy trial has been violated, US Const, Am VI, Const 1963, art 1, § 20. Ordinarily, our scrutiny of the speedy trial claim focuses on the delay between arrest and indictment. *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). This is not the basis of present defendant's speedy trial claim, for it was only three months from his arrest in the summer of 1973 to the initiation of criminal proceedings later that year. He does not claim that this was too lengthy a delay. Rather, the delay alleged to be egregious is the period from the 1967 confession to the 1973 information. Unfortunately, the parties are not in complete agreement on certain crucial facts, notably the status of the Newaygo County murder charge in 1967. It appears that a complaint issued, but there was no service of an arrest warrant, nor formal charge, no arraignment. If these be the facts, the delay of six years between the complaint, without an accompanying arrest, and the formal charges is not a denial of traditional speedy trial guarantees, for the guarantees do not attach until formal arrest.

[2] We note that the Legislature did enact a statute that would protect a criminal sexual psychopath from a subsequent criminal trial based upon the offense with which he originally stood charged. MCLA 780.508; MSA 28.967(8). As we note in our discussion of defendant's third claim, *infra,* even if the statute were still in effect, it would not protect this defendant against prosecution for a different crime. We can offer this defendant no more protection from prosecution than the Legislature provided.

*Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), *People v Grimmett, supra.*

Defendant urges us to apply the speedy trial doctrine nonetheless. *People v Fiorini,* 53 Mich App 389; 220 NW2d 70 (1974), is arguable precedent for applying the *Barker v Wingo, supra,* speedy trial analysis to cases where there has been delay between identification of the suspect and actual arrest, rather than delay between arrest and indictment. But in *Fiorini,* the *Barker* balancing test was only a "not inappropriate" analogy, invoked, it appears, to assist the court in resolving a due process claim. 53 Mich App at 396. We do not feel that *Fiorini* compels us to apply *Barker* in cases such as the present, particularly where defendant does not raise a due process challenge.

If we were to consider *Barker* as analagous, we do not feel that the over six-year delay has unjustifiably prejudiced defendant. Defendant has not articulated any specific harm done to his defense by the delay; the length of the delay itself is not determinative. *Cf. People v Smith,* 57 Mich App 556, 564; 226 NW2d 673 (1975). The prosecutor's inaction in the present case was based on his erroneous belief that defendant was an incurable psychopath and would remain at Ionia State Hospital. The inaction was not a deliberate attempt to hamper the defense. *Cf. People v Smith, supra.*

### III

Defendant claims that MCLA 780.508; MSA 28.967(8) prohibits a trial on the Newaygo County murder. The statute, now repealed,[3] formerly read:

"No person who is found in such original hearing to

---

[3] *See* n 2, *supra.*

be a criminal sexual psychopathic person and such finding having become final, may thereafter be tried or sentenced upon the offense with which he originally stood charged, or convicted, in the committing court at the time of the filing of the original petition."

We disagree. The immunity provided in the section would only prohibit prosecution on the Allegan County charge to which defendant plead guilty prior to being committed. The immunity does not extend to a criminal charge that is not "the offense with which he originally stood charged, or convicted". The Newaygo County charge which defendant seeks to have quashed was not the legal impetus for the commitment. As such, defendant cannot receive immunity from the statute for prosecution on this charge.

## IV

We remand to the Newaygo County Circuit Court with the instruction that the court conduct a *Walker* hearing to determine the validity of defendant's 1967 confession in this case.[4]

---

[4] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).